UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR SKATES,<br><br>Defendant. | Case No. 15-CR-00285-LHK-2<br><br>**AMENDED ORDER RE: DISCLOSURE OF DEFENSE PENALTY PHASE EXPERTS**[1]<br><br>Re: Dkt. Nos. 509, 546, 551, 576, 578 |

Before the Court is Defendant Victor Skates's ("Skates") request to delay penalty phase expert disclosures and Plaintiff United States of America's (hereafter "the government") request to compel penalty phase expert disclosures. Having considered the submissions and oral arguments of the parties, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Skates's request and the government's request.

## I. PROCEDURAL BACKGROUND

On November 1, 2017, the Court set a May 1, 2018 deadline for defense expert disclosures. ECF No. 249 at 2. At a hearing on May 30, 2018, the Court granted Skates's request

---

[1] This Order supersedes ECF No. 599.

1
Case No. 15-CR-00285-LHK-2
AMENDED ORDER RE: DISCLOSURE OF DEFENSE PENALTY PHASE EXPERTS

United States District Court
Northern District of California

1  to extend the deadline to July 1, 2018. ECF No. 354 at 2. On June 29, 2018, Skates notified the
2  government by email of eight expert witnesses. *See* ECF No. 420-1. After the parties met and
3  conferred regarding Skates's disclosures, Skates provided updated expert disclosures on July 20,
4  2018. *See* ECF No. 420-2. On July 27, 2018, the parties met and conferred again, and the
5  government expressed its view that Skates's disclosures remained insufficient. *See* ECF No. 420
6  at 3.

7  As of August 1, 2018—the deadline for the government's *Daubert* motions—Skates had
8  disclosed four potential penalty phase experts and indicated that he may identify more experts in
9  the future. ECF No. 420-2. Skates has not disclosed mental health experts and has not filed a
10 notice pursuant to Federal Rule of Criminal Procedure 12.2 of his intention to rely on an insanity
11 defense at trial. ECF No. 461 at 3.

12 On August 1, 2018, the government filed its *Daubert* motions, ECF No. 420, and Skates
13 filed an opposition on August 15, 2018. ECF No. 438. On August 24, 2018, the Court granted in
14 part and denied in part the government's *Daubert* motions. The Court ordered Skates to
15 supplement his guilt phase expert disclosures, but the Court concluded that the government's
16 challenge to Skates's penalty phase expert disclosures was premature because the government had
17 not decided whether it would pursue the death penalty. ECF No. 455 at 4.

18 Prior to the August 29, 2018 status conference, Skates submitted his position that penalty
19 phase expert disclosures should not be required at all prior to the government's decision to seek
20 the death penalty, and Skates requested that the government be required to file a detailed statement
21 of the aggravating factors it will rely upon in seeking the death penalty and the evidence in support
22 thereof. ECF No. 461 at 4. Moreover, Skates asserted that the better practice would be to require
23 the government to make its presentation in aggravation at the close of the guilt phase trial, and for
24 the defense to respond with its own disclosures thereafter. *Id.* at 6. At the August 29, 2018 status
25 conference, the Court raised the concern that delaying the disclosures of defendant's penalty phase
26 experts until the close of the guilt phase trial may result in an undue delay between the guilt phase
27 and penalty phase trials. ECF No. 491 at 42-43. The Court ordered further briefing on the issue.

28

2

ECF No. 491 at 55-57.

On September 18, 2018, the government filed its Notice of Intent to Seek a Sentence of Death as to Skates. ECF No. 494. The Notice of Intent set forth the statutory threshold findings enumerated in 18 U.S.C. § 3591(a)(1)-(2) as the basis for the imposition of the death penalty, as well as the statutory and non-statutory aggravating factors enumerated in 18 U.S.C. §§ 3592(c) and 3593(a)(2) as the basis for the imposition of the death penalty. *See id.*

The current round of briefing began on September 25, 2018, when Skates filed an Opening Brief Concerning Disclosure of Penalty Phase Experts, where he requested that penalty phase expert disclosures be required no earlier than the beginning of the jury's deliberations in the guilt phase trial, and preferably not until the jury reached a verdict in the guilt phase trial. ECF No. 509 at 3. Skates did not distinguish between disclosures for penalty phase mental health and non-mental health experts. The government filed an opposition on October 9, 2018, ECF No. 546, and Skates filed a reply on October 16, 2018, ECF No. 551. In his reply, Skates again requested that penalty phase expert disclosures be required no earlier than the beginning of the jury's deliberations in the guilt phase trial, and preferably not until the jury reached a verdict in the guilt phase trial. ECF No. 551 at 10. Skates opposed the government's proposition that non-mental health experts and a description of their testimony be disclosed by January 10, 2019, and instead requested that penalty phase non-mental health expert disclosures not be required "until [the] conclusion or near conclusion of the guilt phase trial." ECF No. 551 at 9.

During the October 23, 2018 evidentiary hearing, the Court gave the parties another opportunity to address the timing of Skates's penalty phase expert disclosures. ECF No. 570 at 4-15. The Court indicated its intent to bifurcate the disclosure deadlines of penalty phase non-mental health and mental health experts and instructed the parties to file a joint statement regarding scheduling of penalty phase expert disclosures by October 26, 2018. ECF No. 570 at 16-17. The Court granted Skates's motion to continue the deadline to file the joint statement to October 29, 2018. ECF No. 572. The government filed a statement on October 29, 2018, and Skates filed a statement on October 31, 2018. ECF Nos. 576, 578. In his October 31, 2018

3

Case No. 15-CR-00285-LHK-2
AMENDED ORDER RE: DISCLOSURE OF DEFENSE PENALTY PHASE EXPERTS

statement, Skates requested that all penalty phase expert disclosures be required no earlier than the beginning of the guilt phase trial, and preferably during the jury's deliberations in the guilt phase trial. ECF No. 578 at 2. Skates requested that if non-mental health expert disclosures are required at an earlier date, that they not be required until three weeks prior to the beginning of the guilt phase trial. *Id.* at 6.

## II.  DISCUSSION

Skates's arguments focus on concerns involving penalty phase mental health expert disclosures. Thus, the Court first addresses Skates's penalty phase mental health expert disclosures. The Court then discusses Skates's penalty phase non-mental health expert disclosures.

### A.  Penalty Phase Mental Health Experts

Skates contends that the prevailing view of federal courts in capital cases is that defense penalty phase expert reports should not be disclosed to the government until the completion of the guilt phase trial. ECF No. 509 at 5-6. Specifically, Skates argues that the case law recognizes that premature disclosure of penalty phase experts jeopardizes the defendant's Fifth Amendment privilege against self-incrimination and Sixth Amendment right to effective assistance of counsel. *Id.* at 6. In addition, Skates argues that capital cases require a heightened standard of reliability and that defense counsel must fully investigate the facts of the case before committing to specific expert assistance. ECF No. 578 at 4. *See Caldwell v. Mississippi*, 472 U.S. 320, 323 (1985) (noting heightened need for reliability in death penalty cases). Skates particularly relies on *United States v. Edelin*, which concluded that the defendant's penalty phase mental health expert reports should only be disclosed to the government after the jury reached a verdict in the guilt phase trial. 134 F. Supp. 2d 45, 49 (D.D.C. 2001).

#### 1.  Federal Rules of Criminal Procedure

Skates's request is inconsistent with the Federal Rules of Criminal Procedure and with the relevant case law. Federal Rule of Criminal Procedure 12.2(b) states:

If a defendant intends to introduce expert evidence relating to a mental disease or

4
Case No. 15-CR-00285-LHK-2
AMENDED ORDER RE: DISCLOSURE OF DEFENSE PENALTY PHASE EXPERTS

defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must--within the time provided for filing a pretrial motion or at any later time the court sets--notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk. The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

Once the defendant serves and files the Rule 12.2(b) notice, the court may order the defendant to be examined by an expert for the government. Fed. R. Crim. P. 12.2(c)(1)(B). The results of any examination under this rule must be sealed and will only be disclosed to the government if the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer mental health expert testimony during the penalty phase. Fed. R. Crim. P. 12.2(c)(2). The defendant is not required to disclose to the government "the results and reports of any examination on mental condition conducted by the defendant's expert" until after the disclosure of the results and reports of the government's examination. Fed. R. Crim. P. 12.2(c)(3).

The Court agrees with the case law concluding that meaningful notice under Rule 12.2 includes the kinds of mental health experts who will testify at trial and the nature of any examinations that such experts have conducted or will conduct. *See United States v. Watts*, No. 14-CR-40063-JPG, 2016 U.S. Dist. LEXIS 175104, at \*10 (S.D. Ill. Dec. 19, 2016) (concluding that meaningful notice under Rule 12.2 includes the kind of mental condition experts and nature of tests to be performed); *United States v. Montgomery*, No. 2:11-CR-20044-JPM-1, 2014 U.S. Dist. LEXIS 191370, at \*13 (W.D. Tenn. Mar. 27, 2014) (same); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1238 (D.N.M. 2008) (same); *United States v. Wilson*, 493 F. Supp. 2d 348, 353 (E.D.N.Y. 2006) (same); *United States v. Johnson*, 362 F. Supp. 2d 1043, 1080 (N.D. Iowa 2005) (same); *United States v. Sampson*, 335 F. Supp. 2d 166, 242 (D. Mass. 2004) (same); *but see United States v. Beckford*, 962 F. Supp. 748, 764 (E.D. Va. 1997) (requiring disclosure of names, qualifications, and brief general summary of topics to be addressed by expert witnesses); *United States v. Vest*, 905 F. Supp. 651, 654 (W.D. Mo. 1995) (same). Meaningful disclosure under Rule 12.2 prevents undue delay by protecting the government's right to develop rebuttal evidence fairly and efficiently. *See Sampson*, 335 F. Supp. 2d at 242; *Beckford*, 962 F. Supp. at 759-60; *United*

*States v. Haworth*, 942 F. Supp. 1406, 1407-08 (D.N.M. 1996); *see also Edelin*, 134 F. Supp. 2d at 49 (concluding the government's statutory right of rebuttal requires meaningful disclosure so that the government can respond to mitigating factor evidence). Skates fails to identify any case concluding that Rule 12.2 does not require disclosure of the kinds of mental health experts and the nature of the examinations that such experts have conducted or will conduct.

Moreover, Skates misconstrues the case law interpreting Rule 12.2. *Edelin* required delaying the disclosure of penalty phase mental health expert reports until the jury reached a verdict in the guilt phase trial in order to protect the defendant's Fifth and Sixth Amendment rights. 134 F. Supp. 2d at 55; *see also Sampson*, 335 F. Supp. 2d at 243 (concluding that the government's use of penalty phase mental health expert reports during the guilt phase trial would violate the defendant's Fifth and Sixth Amendment rights). Mental health expert reports may include incriminating statements made during a mental health exam, and thus the *Edelin* court explained that the Fifth Amendment prohibited the government's use of any information in these reports during the guilt phase trial. *See* 134 F. Supp. 2d at 55.

However, *Edelin* concluded that the government must have the ability to rebut defense penalty phase experts and specifically required pre-guilt phase trial disclosures of the identities and qualifications of penalty phase mental health experts and a brief, general summary of the information the experts would provide. *See id.* at 58. Moreover, in all the cases upon which Skates relies where the government moved to compel Rule 12.2 disclosures prior to the beginning of the guilt phase trial, the courts required pre-guilt phase trial disclosures of at least the kinds of penalty phase mental health experts upon which the defendant would rely and the nature of the examinations that such experts have conducted or would conduct. *See Watts*, 2016 U.S. Dist. LEXIS 175104, at *10 (requiring disclosure of kinds of mental condition experts and nature of tests to be performed); *Wilson*, 493 F. Supp. 2d at 353 (same); *Beckford*, 962 F. Supp. at 764 (requiring disclosure of names, qualifications, and brief general summary of topics to be addressed by expert witnesses); *Haworth*, 942 F. Supp. at 1409 (same); and *Vest*, 905 F. Supp. at 654 (same).

The Court agrees with the reasoning of the cases cited by Skates and concludes that it is

6

appropriate to distinguish between disclosure of penalty phase mental health expert reports on the one hand and the kinds of penalty phase mental health experts and the nature of the examinations they have conducted or will conduct on the other. The penalty phase mental health expert reports may contain incriminating information, and their disclosure may affect defense counsel's ability to adequately perform their job. However, disclosure of the kinds of penalty phase mental health experts and the nature of the examinations that such experts have conducted or will conduct does not raise the same Fifth and Sixth Amendment concerns. *Cf. Williams v. Florida*, 399 U.S. 78, 85 (1970) ("Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself."). Despite repeated requests from the Court, Skates fails to address this distinction and fails to make any argument as to the disclosure of only the kinds of penalty phase mental health experts and the nature of the examinations such experts have conducted or will conduct.

The government requests that Skates Rule 12.2 disclosures include the names of the mental health experts upon which Skates will rely during the penalty phase trial. ECF No. 546 at 11. However, the government offers no argument as to why Skates's Rule 12.2 penalty phase disclosures should include the names of the mental health experts, and the Court finds no support in the case law for including mental health expert names or qualifications in Rule 12.2 penalty phase disclosures. *See Montgomery*, 2014 U.S. Dist. LEXIS 191370, at *15 (excluding names and CV's from Rule 12.2 disclosure); *Wilson*, 493 F. Supp. 2d at 353 (same); *Sampson*, 335 F. Supp. 2d at 242 (excluding nature of proffered mental condition from disclosure).

Prior to 2002, Rule 12.2 did not apply to disclosures of penalty phase mental health experts. *See* Fed. R. Crim. P. 12.2, 2002 Advisory Committee Notes (explaining that the previous version of Rule 12.2 only required disclosure of guilt phase mental health experts). Since then, the case law has interpreted Rule 12.2 as specifically limiting what kinds of disclosures are appropriate regarding penalty phase mental health experts. *See Wilson*, 493 F. Supp. 2d at 352

7
Case No. 15-CR-00285-LHK-2
AMENDED ORDER RE: DISCLOSURE OF DEFENSE PENALTY PHASE EXPERTS

(concluding that "the scheme contemplated by Rule 12.2" did not allow for disclosures of more than the kinds of penalty phase mental health experts and the types of exams that such experts would perform); *Sampson*, 335 F. Supp. 2d at 243 (explaining that prior to 2002 the courts were split as to the proper extent of disclosures regarding mental health experts and that the amended Rule 12.2 limited the extent of disclosures). The Court notes that the cases cited above requiring disclosure of the names of penalty phase mental health experts were all prior to the 2002 amendment to Rule 12.2 and did not provide any reasoning as to why disclosure of penalty phase mental health expert names was appropriate. *See Edelin*, 134 F. Supp. 2d at 58; *Beckford*, 962 F. Supp. at 764; *Haworth*, 942 F. Supp. at 1409; and *Vest*, 905 F. Supp. at 654.

By the April 10, 2019 deadline for filing pretrial motions, Skates, pursuant to Fed. R. Crim. P. 12.2(a) and (b), shall serve and file notice of his intention to assert an insanity or mental condition defense at the guilt phase trial and identify the kinds of mental health experts upon which he intends to rely at the penalty phase trial and the nature of the examinations those experts have conducted or will conduct.

### 2. Trial Management

Skates's request to delay all disclosures regarding penalty phase experts until the conclusion of the guilt phase trial would result in undue delay between the guilt phase trial and penalty phase trial. Any delay is problematic because of the requirement to maintain the same jury for the duration of the guilt and penalty phases of trial. *See United States v. Mikhel*, 889 F.3d 1003, 1050-51 (9th Cir. 2018) ("Generally, the same jury that determines a defendant's guilt must also consider his or her eligibility for the death penalty under the [Federal Death Penalty Act]."). The court in *Edelin*—upon which Skates relies heavily—recognized this concern:

> Although the defendant might feel more comfortable delaying the decision of what mental health information he should bring at the sentencing phase of trial, the alternative he presents to the Court is not an attractive one. A continuance in the trial between the guilt and sentencing phases of trial, after months of guilt phase proceedings, would be detrimental to the jury and to the judicial process. The burden on the jury of a lengthy delay between the guilt and sentencing phases would be severe. The evidence from the guilt phase, which is usually adopted at sentencing, would fade from the minds of the jurors, requiring the parties to

8
Case No. 15-CR-00285-LHK-2
AMENDED ORDER RE: DISCLOSURE OF DEFENSE PENALTY PHASE EXPERTS

> resubmit information previously provided to the jury. The context of the evidence would be disrupted, confusing the jury. This would prejudice the Government and the defendant alike. While the defendant does not appear to be concerned with the degradation of the information from the guilt phase in the minds of the jury, the Court is concerned that a delay would require lengthy presentations of information to refresh the recollection of the jury, and would possibly result in an inaccurate sentencing determination.
>
> Other jury related considerations include the increased likelihood of some accident or other circumstance that may require individual jurors to leave the jury panel. Any added delay during trial only tempts fate to cause some misfortune to jurors, thereby decreasing the size of the panel. A loss of even one juror after the guilt determination would be a threat to the viability of the sentencing procedure.

*Edelin*, 134 F. Supp. 2d at 57.

The Court has reviewed the most recent death penalty trial to take place in this district and the Court's decision here is informed by that experience. In *United States v. Duong*, prospective jurors first reported on January 26, 2010, and January 28, 2010. No. 01-CR-20154-JF-1, ECF Nos. 1115, 1116. Jury selection began on February 23, 2010, *Id.* at ECF No. 1169, and 12 jurors and 6 alternates were selected on March 23, 2010, *Id.* at ECF No. 1201. The guilt phase trial began on June 7, 2010, *Id.* at ECF No. 1235. The jury began deliberations in the guilt phase trial on September 21, 2010, at 10:00 a.m., and at 3:00 p.m. on the same day, the jury indicated to the Court that they had reached a verdict. *Id.* at ECF No. 1339. The trial was continued until 9:00 a.m. on September 22, 2010, for the jury to render the verdict in the guilt phase trial. *Id.* at ECF No. 1339, 1350. Before the beginning of the penalty phase trial, the Court considered evidentiary challenges filed by both sides. The penalty phase trial began on October 12, 2010. *Id.* at ECF No. 1453. The jury began deliberations in the penalty phase trial on December 14, 2010 and indicated in the late afternoon on the same day that they had reached a verdict. *Id.* at ECF No. 1489. The trial was continued until 9:00 a.m. on December 15, 2010, for the jury to render the verdict in the penalty phase trial. *Id.* at ECF No. 1491.

Having reviewed the Federal Rules of Criminal Procedure, the case law, and the proceedings in *Duong*, the Court agrees with the government that pre-guilt phase trial disclosure of the kinds of penalty phase mental health experts and the nature of the examinations they have

9

Case No. 15-CR-00285-LHK-2
AMENDED ORDER RE: DISCLOSURE OF DEFENSE PENALTY PHASE EXPERTS

conducted or will conduct is necessary to allow the government to prepare rebuttal expert testimony and to meaningfully challenge the reliability of Skates's penalty phase experts without undue delay. Such disclosures will protect the government's ability to "conduct the kind of investigation needed to acquire rebuttal testimony." *Sampson*, 335 F. Supp. 2d at 243 (citing Fed. R. Crim. P. 12.2, 2002 Advisory Committee Notes).

Consistent with Federal Rule of Criminal Procedure 12.2(c)(2) and (3) and case law, the government does not request the disclosure of Skates's penalty phase mental health expert reports until after a guilty verdict on a death-eligible count, if there is such a verdict; after Skates has affirmed his intention to introduce mental health evidence at the penalty phase trial; and after the government discloses its mental health expert reports. ECF No. 576 at 5; *see Edelin*, 134 F. Supp. 2d at 55 (concluding that defendant's mental health expert reports should only be disclosed to government after termination of guilt phase, and only if defendant affirms intent to present mental health evidence at penalty phase); *Beckford*, 962 F. Supp. at 764 (same); *Haworth*, 942 F. Supp. at 1409 (same); *Vest*, 905 F. Supp. at 654 (same). The Court concurs with the government that this is the appropriate sequence of events. *Daubert* motions as to the penalty phase mental health experts will be litigated between the guilt and penalty phases of trial.

However, this sequence of events may be subject to change if the government files a motion seeking designation of firewall counsel. *See Watts*, 2016 U.S. Dist. LEXIS 175104, at *11-12 (requiring pretrial disclosure of mental health expert reports to a firewalled attorney); *United States v. Northington*, No. 07-CR-550-05, 2012 U.S. Dist. LEXIS 97481, at *30 (E.D. Pa. 2012) (same); *Wilson*, 493 F. Supp. 2d at 355-56 (same); *see also Montgomery*, 2014 U.S. Dist. LEXIS 191370, at *15 (requiring pretrial disclosure of a summary of expert testimony to a firewalled attorney). In the instant case, the government has stated that it will be prepared to make a decision regarding firewall counsel after Skates makes his Rule 12.2 disclosures. ECF No. 576 at 5. The Court notes that use of firewall counsel may allow counsel for both sides more time to litigate *Daubert* motions, and to prepare their arguments and, if necessary, to refine their penalty phase trial strategy following the Court's rulings on any *Daubert* motions.

Case No. 15-CR-00285-LHK-2
AMENDED ORDER RE: DISCLOSURE OF DEFENSE PENALTY PHASE EXPERTS

### 3. Adequacy of Government Disclosures

Skates also argues that it is premature to require him to select and disclose penalty phase experts because he has not received adequate disclosures from the government. ECF No. 578 at 3. In particular, Skates argues that he should not be required to make any penalty phase expert disclosures prior to receiving a complete disclosure from the government of its evidence in support of aggravating factors in support of the death penalty.

On October 23, 2018, the government said it would propose a date for disclosure of evidence in support of aggravating factors in support of the death penalty in its October 26, 2018 joint statement. ECF No. 570 at 14-16. However, the government failed to address this disclosure date in its statement. The Court orders the government to disclose its evidence in support of aggravating factors in support of the death penalty by January 23, 2019.

### 4. Mr. Burt's Declaration

Skates directs the Court's attention to the declaration of Mr. Burt. ECF No. 460-1. Mr. Burt stated that Skates should not be required to disclose penalty phase experts prior to the government's final decision to seek the death penalty. In addition, Mr. Burt discussed the work that defense counsel must undertake in choosing expert witnesses and explained that mental health expert reports should not be disclosed prior to the guilt phase of trial. The Court concludes that nothing in Mr. Burt's declaration is inconsistent with the conclusions in this order.

### B. Penalty Phase Non-Mental Health Experts

In his October 31, 2018 statement, Skates requested that any disclosure of penalty phase non-mental health experts not be required more than three weeks prior to trial. ECF No. 578. However, Skates relied on the case law and arguments discussed above with respect to penalty phase mental health experts and failed to make any argument specific to penalty phase non-mental health expert disclosures. In his original briefing on this matter, Skates failed to distinguish between disclosures of penalty phase mental health and non-mental health experts. Thus, Skates has provided the Court with no reasoning as to the specific timing of penalty phase non-mental health expert disclosures.

Penalty phase non-mental health expert disclosures do not raise the same Fifth Amendment concerns that penalty phase mental health expert disclosures raise. Skates fails to cite, and the Court is not aware of any cases requiring delayed disclosure of penalty phase non-mental health experts. Federal Rule of Criminal Procedure 16(b)(1)(C) requires the defendant to provide the government with a written summary of any testimony that they plan to use as evidence at trial if the defendant has given notice under Rule 12.2(b). Skates acknowledges that the federal courts to consider the question have concluded that Rule 16 applies to the penalty phase of trial. ECF No. 509 at 7. *See Montgomery*, 2014 U.S. Dist. LEXIS 191370, at *24; *Wilson*, 493 F. Supp. 2d at 355-56; *United States v. Catalan Roman*, 376 F. Supp. 2d 108, 111-14 (D.P.R. 2005). Moreover, the same concerns with delay discussed above apply to the disclosure of penalty phase non-mental health experts.

Skates shall disclose penalty phase non-mental health experts and a summary of their reports by March 27, 2019. *Daubert* motions as to these non-mental health experts will be briefed on April 24, 2019, May 8, 2019, and May 15, 2019, and heard on May 29, 2019 at 9:15 a.m. This will be the same briefing and hearing schedule for any government challenges to Skates's guilt phase mental health experts. The Court has issued a Thirteenth Amended Pre-Trial and Trial Scheduling Order memorializing the deadlines set forth in the instant order. ECF No. 598.

The Court has delayed the penalty phase non-mental health experts disclosure deadline to provide Skates with as much time as possible to prepare his defense while still leaving adequate time for *Daubert* motions prior to the beginning of the guilt phase trial on June 10, 2019. The Court's order is consistent with the case law, which does not require any delay in non-mental health penalty phase expert disclosures.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Skates's request and the government's request as follows: (1) the government shall disclose its evidence in support of aggravating factors in support of the death penalty by January 23, 2019; (2) Skates shall disclose penalty phase non-mental health experts and a summary of their reports by March 27,

2019; (3) Skates shall serve and file Rule 12.2 disclosures by April 10, 2019, including the names of any guilt phase mental health experts he will rely upon, a summary of such experts' qualifications, and a brief summary of their testimony, including any examinations they have conducted or will conduct; (4) Skates's Rule 12.2 disclosures shall include the kinds of penalty phase mental health experts he will rely upon and the nature of the examinations such experts have conducted or will conduct; (5) Skates shall not be required to include the names or qualifications of his penalty phase mental health experts in his Rule 12.2 disclosures; (6) Skates shall only be required to disclose penalty phase mental health expert reports if there is a guilty verdict on a death-eligible count, Skates affirms his intent to provide mental health expert testimony during the penalty phase trial, and the government discloses its penalty phase mental health expert reports; (7) if the government moves to designate firewall counsel, the Court will consider any appropriate requests regarding disclosure of penalty phase mental health expert reports and the scheduling of *Daubert* motions regarding such experts.

**IT IS SO ORDERED.**

Dated: November 15, 2018

　　　　　　　　　　　　　　　　　　　　　*Lucy H. Koh*
　　　　　　　　　　　　　　　　　　　　　LUCY H. KOH
　　　　　　　　　　　　　　　　　　　　　United States District Judge

13
Case No. 15-CR-00285-LHK-2
AMENDED ORDER RE: DISCLOSURE OF DEFENSE PENALTY PHASE EXPERTS